## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

GULF VIEW ENTERPRISES, LLC,          CASE NO: 2:23-cv-00422

     Plaintiff,

vs.

INDEPENDENT SPECIALTY
INSURANCE COMPANY AND
CERTAIN UNDERWRITERS AT
LLOYD'S AND OTHER INSURERS
SUBSCRIBING TO BINDING
AUTHORITY B604510568622022,

     Defendants.

_____/

## PETITION FOR DECLARATORY RELIEF

Pursuant to 28 U.S.C. § 2201, Plaintiff, Gulf View Enterprises, LLC (the "Insured" or "Plaintiff"), sues Defendants, Independent Specialty Insurance Company ("Independent Specialty") and Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622022 ("Underwriters," and, together with Independent Specialty, the "Insurance Companies" or "Defendants"), and petitions this Court for declaratory relief:

## NATURE AND SUBJECT OF ACTION

1.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2.    The subject matter of this action is an arbitration provision in an insurance contract with the Insurance Companies bearing policy number 2022-

1

000320-01 (the "Policy"), which provided property insurance for the Insured's property located at 21942 Edgewater Dr., Port Charlotte, FL 33952-9723 (the "Property") from June 28, 2022, through June 28, 2023. A copy of the Policy is attached as **Exhibit A**.

3.      The Insurance Companies have invoked the Policy's arbitration clause (the "Arbitration Clause") and have, *ex parte,* selected an arbitrator on behalf of the Insured and instructed the arbitrators to proceed with arbitration. The Insured strenuously objected and sought to have the Insurance Companies withdraw the arbitrator appointed on behalf the Insured and allow the Insured to appoint its own arbitrator as mandated by the arbitration clause. The Insurance Companies, however, have insisted on proceeding with the *ex parte* arbitration by two of its own hand-picked arbitrators over the Insured's objection.  Having no Insured-appointed, neutral or disinterested arbitrator to represent it in the imminent *ex parte* arbitration, the Insured has no choice but to seek a declaration from this Court that, pursuant to the Policy's arbitration clause, the Insurance Companies' *ex parte* appointment of an arbitrator on behalf of the Insured breaches the Policy, and the Insured is entitled to appoint its own arbitrator to represent it in arbitration of any disputes under the Policy.

## THE PARTIES

4.      The Insured is a Florida limited liability company licensed to do business in Florida, and conducting business in Charlotte County, Florida.

5.      Defendant, Independent Specialty, is a foreign for profit corporation with

2

its principal place of business in Texas, licensed to do business in Florida, and conducting business in Charlotte County, Florida.

6.    Defendant, Underwriters, is a foreign corporation licensed to do business in Florida and doing business in Charlotte County, Florida.

## JURISDICTION AND VENUE

7.    The Court has original jurisdiction by virtue of 28 U.S.C. § 1331 and 9 U.S.C. § 203 and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10, 1958, 21 U.S.T. 2517 (the "Convention"), as implemented by the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 201-208, because Defendant, Underwriters, is a foreign entity operating out of the United Kingdom.

8.    The Court also has jurisdiction by virtue of 28 U.S.C. § 1331 because 28 U.S.C. § 2201 permits the Insured to seek declaratory judgment from this Court as there is an actual controversy with the Insurance Companies.

9.    This Court has personal jurisdiction over Independent Specialty because Independent Specialty has been registered to do business in the State of Florida and conducts substantial and not isolated business within the Middle District of Florida such that forcing Independent Specialty to litigate in Florida does not offend the traditional notions of fair play and substantial justice.

10.    This Court has personal jurisdiction over Underwriters because Underwriters has been registered to do business in the State of Florida and conducts substantial and not isolated business within the Middle District of Florida such that

3

forcing Underwriters to litigate in Florida does not offend the traditional notions of fair play and substantial justice.

11.    The Court also has jurisdiction over the Insurance Companies pursuant to sections 48.193(1)(a) and 48.193(2), Florida Statutes, because, among the substantial and not isolated activity within the State of Florida, the Insurance Companies entered into and breached their contract to insure the Insured in Florida.

12.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the district, and the Insurance Companies delivered the Policy to the Insured in this district.

13.    Venue is proper in this District because the Insured's claims originated within the Middle District of Florida. Further, the Insurance Companies regularly and continuously conduct business in interstate commerce between and among the several United States, including Florida.

## GENERAL ALLEGATIONS

14.    The Policy provided insurance coverage for the Property at all relevant times.

15.    On or about September 28, 2022, the Property suffered substantial damage resulting from Hurricane Ian.

16.    The Policy provided coverage for all of the losses, damages, and expenses that the Insured suffered and incurred.

17.    In accordance with the terms and conditions of the Policy, the Insured

properly and timely notified the Insurance Companies of its claim.

18.    The Insurance Companies acknowledged the Insured's claim and assigned it claim number SDA22038160 (the "Claim").

19.    The Insured operates a medical facility. Immediately after Hurricane Ian, two of the area's three hospital facilities were substantially damaged or closed.  At that time, there were numerous people in the community that needed medical treatment, including first responders. Within forty-eight hours after the storm, the Insured met with the Federal Emergency Management Agency ("FEMA") and indicated that it could immediately begin seeing patients if it could get its roof temporarily sealed and covered, the property dried out, and a generator to supply power – which it did.  Once the facility was open and operating, the Insured began seeing patients, including hurricane first-responders such as the county sheriff, and treated these first responders at no cost.

20.    Because under the circumstances it had neither the time nor the experience to manage its insurance claim, and unaware that there was any limitation on doing so in the Policy, the Insured retained public adjuster and appraiser, Craig Drillich, of Property Damage Consultants to assist and advise the Insured regarding the scope of damages and adjustment of the loss.

21.    In response, the Insurance Companies raised the anti-public adjuster endorsement to the Insured and refused to continue adjusting the loss.

22.    The Insured subsequently withdrew from its public adjuster contract with Mr. Drillich.

23.     The Policy does not prohibit an insured from hiring a licensed appraiser to assess the cost and scope of repairs.  Because Mr. Drillich is also a licensed appraiser, and because the Insured is a limited liability company which requires someone to represent itself and communicate on behalf of the limited liability company to the Insurance Companies, the Insured gave Mr. Drillich a limited power of attorney allowing him to assist the Insured in adjusting the claim in his capacity as a licensed appraiser.

24.     In response, upon receiving the power of attorney and being informed of the terminated public adjuster contract, the Insurance Companies continued to refuse to adjust the loss.

25.     On 1/12/23, the Insurance Companies sent a letter to the Insured taking the position that the Insured breached the policy by giving Mr. Drillich the limited power of attorney, by preventing a complete roof inspection by sealing the roof with shrink wrap, and in signing an assignment of benefits in favor of a company that performed mitigation services.

26.     The Insurance Companies then invoked arbitration:

In an effort to resolve this Claim, the Insurers are invoking arbitration, as permitted by the Policy. The Policy provides:

3. Arbitration Clause and Choice of Law
All matters in difference between an insured and the **INSURER** (hereinafter referred to as "the Parties") in relation to this insurance, including its formation, validity, and the arbitrability of any dispute, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. This Arbitration Clause applies to all persons or entities claiming that they are entitled to any sums under the POLICY, including, but not limited to,

6

**ADDITIONAL INSURED(S), MORTGAGEE(S), LENDER'S LOSS PAYEE(S),** assignees, and/or lienholders.

*** 

***The Arbitration Panel is to resolve all disputes between the parties***. The Insurers reserve the right to ask the Panel to decide any other issue. Consistent with the Arbitration Clause, the Insurers have selected Akos Swierkiewicz as their selected arbitrator. Mr. Swierkiewicz contact information is as follows:

Akos Swierkiewicz
364 W. Trenton Ave., Suite 5
Morrisville, PA 19067
Akos.s@ircosllc.com

Please provide the name and contact information of your selected arbitrator by February 11, 2023.

A copy of the Insurance Companies' letter is attached as **Exhibit B** (the "1/12/23 Letter") (emphases added).

27.     After invoking arbitration, naming its arbitrator, and demanding that the Insured select an arbitrator by February 11, 2023, in the very same letter, **the Insurance Companies *offered to waive arbitration* for the claim and continue adjusting the claim *if* the Insured agreed to withdraw all representation of the public adjuster**. The Insurance Companies made it clear that they would proceed with arbitration only "[i]f we do not receive your written proof" of withdrawing the representation of the public adjuster by January 22:

As an alternative to arbitration, we once again request that you send us written proof that you have withdrawn the representation of the Public Adjuster by January 22, 2023. If we do not receive your written proof by this date, we will proceed with arbitration under the policy.

7

*See* Exhibit B p. 5.

28.     The Insured timely accepted the Insurance Companies' offer to forgo arbitration in exchange for the Insured's cancellation of the public adjuster contract and withdrawing the power of attorney in favor of Mr. Drillich. *See* Email dated 1/17/23 from Craig Drillich confirming that Mr. Drillich's company had released the Insured from its public adjuster contract and that the Insured had also terminated the power of attorney, attached as **Exhibit C.** ("Please allow this email to confirm that we have released you from our public adjuster contract that you signed on October 1, 2022, and we understand that you have terminated the power of attorney that you signed on October 11, 2022. We wish you the best of luck.").

29.     After receiving the formal cancellation of both the public adjuster's contract and the power of attorney, the Insured's representative, Douglas Tucker, via email dated January 20, 2023, stated to the Insurance Companies' representative:

> I am very frustrated, and I don't think it is fair that I can't give Craig a power of attorney to help my company with the insurance claim when I don't have the time or experience to deal with this.  With that said, I need the money from my insurance so I can fix my property and continue operating my business, and I don't want my claim to go to arbitration. So, I have decided ***to accept your offer*** as per your letter on 1/12/23 and I have fired Craig ***to avoid any arbitration.***

*See* Email dated 1/20/23 from Douglas Tucker to the Insurance Companies' representative, Mario Munoz, attached as **Exhibit D** (emphases added).

30.     With the matter of the public adjuster and arbitration resolved, the claim should have moved forward.  But it did not.  Mr. Tucker followed up with Mr. Munoz on multiple occasions and received no response.  *See* Emails dated 1/30/23 and

2/6/23 from Douglas Tucker to the Insurance Companies' representative, Mario Munoz, attached as **Exhibit E.**

31.     On February 7, 2023, the Insurance Companies, through Mr. Munoz, finally responded that he had "put everything in motion and will provide you with an update once we've assigned someone to coordinate an inspection." Despite Mr. Munoz's commitment, however, the Insurance Company never made any further effort to complete the adjustment of the claim. *See* Email dated 2/7/23 from Mario Munoz to Douglas Tucker attached as **Exhibit F.**

32.     Because several months had passed and the Insurance Companies had still not issued a coverage determination and appeared to have ceased taking any further steps to adjust the loss, the Insured obtained undersigned counsel, who first filed a civil remedy notice of insurer violation and eventually a notice of intent to initiate litigation (the "Notice of Intent").

33.     On March 21, 2023, in response to the Notice of Intent, the Insurance Companies' counsel sent a letter to the Insured's counsel, split into two distinct sections (the "3/21/23 Letter"). The first, entitled "1. Formal Response to the Property Insurance notice of Intent to Initiate Litigation" rejected the Notice of Intent as premature because the Insurance Company had not yet made a determination of coverage, made no mention of arbitration, and did not discuss any specific disputes between the parties:

I. **Formal Response to the Property Insurance Notice of Intent to Initiate Litigation.**

This response is being sent within ten (10) business days of receipt of this Notice, to the email address provided in the Notice in accordance with the directions provided by the Florida Department of Financial Services and 627. 70152(4).

After reviewing the Property Insurance Notice of Intent to Initiate Litigation ("Notice"), The Insurers, through its agents, conducted a thorough review of its handling of the lnsured's claim. The Insurers have not committed any of the conduct alleged in the Notice and the Complaint accompanying the Notice. Please be advised, the Notice is defective as the Insurers have not made a determination of coverage. Florida Statute 627. 70152(3)(a) provides as follows:

As a condition precedent to filing a suit under a property insurance policy, a claimant must provide the department with written notice of intent to initiate litigation on a form provided by the department. Such notice must be given at least 10 business days before filing suit under the policy, but may not be given before the insurer has made a determination of coverage under s. 627.7013 ....

Therefore, the Insurers reject the lnsured's Notice as it is premature and defective.

*See* 3/21/23 Letter from the Insurance Companies' counsel to the Insured's counsel, attached as **Exhibit G,** pp. 1-2.

34.     In a separate second section, the 3/21/23 Letter once again purported to invoke arbitration based on: (i) a notice they had received on 3/3/23 from the Insured's former public adjuster requesting that all new correspondence be sent to the former public adjuster's new address, and (ii) the Insured's use of the public adjuster's estimate to support its damages:

**II. Formal Notice of Invoking Arbitration.**

The Insured submitted a claim on October 2, 2022, for damage related to a Hurricane Ian loss on September 28, 2022 (the "Claim"). On October

10

11, 2022, the lnsured's Principal, Joseph Ravid, executed a Limited Power of Attorney. The Limited Power of Attorney granted Public Adjuster Craig Drillich of Property Damage Consultants the power to act on behalf of the Insured regarding the purported Hurricane Ian Claim. The policy contains an Anti-Public Adjuster Endorsement.

The execution of the Limited Power of Attorney was a breach of the Policy as the Insured is not to "hire, engage, retain, contract with, or otherwise utilize the services of a public adjuster ... " The Insurers sent correspondence requesting that the Insured and the lnsured's Public Adjuster comply with the Policy. However, the Insurers' requests for compliance went ignored, and the Limited Power of Attorney was not withdrawn.

On January 1 2, 2023, the Insurers sent written correspondence to the Insured to resolve the issue regarding the lnsured's use of a public adjuster. The correspondence requested that the Insured provided written proof that Property Damage Consultants had withdrawn its representation by January 22, 2023.

On or about February 7, 2023, the Insurers' agent received notice that Property Damage Consultants had terminated the Power of Attorney signed on October 11 , 2022. Nevertheless, on March 3, 2023, the Insurers received written correspondence from Property Damage Consultants requesting that all new correspondence be sent to their new address. Also, the Insured is now using an estimate prepared by Property Damage Consultants to seek damages regarding this claim. As discussed above, the Insured is prohibited from utilizing the services of a public adjuster. Therefore, the use of an estimate from a public adjuster is a breach of the Policy.

In an effort to resolve this Claim, the Insurers are invoking arbitration, as permitted by the Policy. The Policy provides:

3. Arbitration Clause and Choice of Law

All matters in difference between an insured and the INSURER (hereinafter referred to as "the Parties") in relation to this insurance, including its formation, validity, and the arbitrability of any dispute, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. This Arbitration Clause applies to all persons or entities claiming that they are entitled to any sums under the POLICY, including, but not limited to,

ADDITIONAL INSURED(S), MORTGAGEE(S), LENDER'S LOSS PAYEE(S), assignees, and/or lienholders.

\*\*\*

Policy at SMB 300 2111 CW

The Arbitration Panel is to resolve all disputes between the parties. The Insurers reserve the right to ask the Panel to decide any other issue. Consistent with the Arbitration Clause, the Insurers have selected Akos Swierkiewicz as their selected arbitrator. Mr. Swierkiewicz contact information is as follows:

Akos Swierkiewicz
364 W. Trenton Ave., Suite 5
Morrisville, PA 19067
Akos.s@ircosllc.com

Please provide the name and contact information of your selected arbitrator by Thursday, April 20, 2023.

In addition to invoking *__arbitration on the issues outlined in this correspondence, the Insurers reserve the right to invoke arbitration regarding any additional disputes or issues that may arise in regarding this Claim.__*

*See* Ex. G pp. 2-4 (emphasis added).  Notably, the 3/21/23 Letter invoked arbitration only as to "the issues outlined in this correspondence" and reserved the right to invoke arbitration separately "regarding any additional disputes or issues that may arise in regarding this Claim." *Id.*

35.    The Insured reasonably believed based on the above language that the *only* issues outlined for arbitration in the 3/21/23 Letter were those related to the Insured's use of the Public Adjuster. The only other issue addressed in the correspondence at all (although not in connection with arbitration) was the rejection

of the Notice of Intent as premature.

36. The Policy's Arbitration Clause provides:

3. **Arbitration Clause and Choice of Law**
All matters in difference between an insured and the Insurer (hereinafter referred to as "the Parties") in relation to this insurance, including its formation, validity, and the arbitrability of any dispute, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal that they are entitled to any sums under the policy, including, but not limited to, additional insureds, mortgagees, lender's loss payees, assignees, and/or lienholders.

1. This provision governs the appointment of the Arbitration Tribunal. Unless the Parties otherwise agree, the Arbitration Tribunal shall consist of disinterested persons currently or formerly employed or engaged in a senior position in insurance underwriting or claims at an insurer. The Arbitrators may not have any interest or claimed interest in the outcome of the arbitration, including any contingency interest or an assignment of any portion of the claim.

   **The Parties may agree upon a single Arbitrator within thirty (30) days of one receiving a written Request from the other for arbitration.  If they do not agree to one Arbitrator**, the Claimant (the party requesting arbitration) shall appoint his or her arbitrator and give written notice thereof to the Respondent (the party receiving the request for arbitration).  Within (30) days of receiving such notice, the Respondent shall appoint his or her Arbitrator and give written notice of his or her selection to the Claimant.  If the Respondent does not provide written notice of his or her Arbitrator within thirty (30) days of receiving the Claimant's notice, the Claimant may nominate an Arbitrator on behalf of the Respondent.

   The two Arbitrators shall then select an Umpire. If the two Arbitrators fail to agree on the selection of the Umpire within thirty (30) days of the appointment of the second named Arbitrator, each Arbitrator shall submit to the other a list of three Umpire candidates. Each Arbitrator shall then select one name from the list submitted by the other. The Umpire shall be selected from the two names chosen by a lot drawing procedure to be agreed upon by the Arbitrators.

   The Arbitration Tribunal consists of the Umpire, the Claimant's selected Arbitrator, and the Respondent's selected Arbitrator.

2.  The Arbitration Tribunal shall have the power to fix all procedural rules for the Arbitration, including discretionary power to make orders as to any matter which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses, and any other matter whatsoever relating to the conduct of the Arbitration. The Arbitration Panel may receive and act upon such evidence in its discretion regardless of whether that evidence is oral or written or strictly admissible or not.

3.  The seat of the Arbitration shall be in New York, unless some other location is agreed to by the Parties and the Arbitration Tribunal. The Arbitration Tribunal shall apply the law of New York when resolving all matters in difference between the Parties, regardless of the location of the Arbitration.

4. The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

5. The parties shall each bear their own costs, expenses and attorney's fees in any Arbitration proceeding.  Each party will also bear the costs of its own Arbitrator and will bear, jointly and equally with the other party, the costs of the Umpire. The Arbitration Tribunal will allocate the remaining costs of the arbitration.

6.  The award of the Arbitration Tribunal shall be in writing and binding upon the Parties, who covenant to carry out the same.  If either of the Parties should fail to carry out any award, the other may apply for its enforcement as permitted by the Convention on the Recognition and Enforcement of Foreign Arbital Awards.

7.  The provisions in this Arbitration Clause are severable, and if any portion is found to be unenforceable, the other paragraphs, or parts thereof, shall remain full, valid and enforceable.

*See* Ex. A at Form SMB 300 2111 pp. 27-28 of 40 (emphasis added).

37.    The 3/21/23 Letter purported not only to invoke arbitration as to the issues outlined in the letter, but also to appoint the Insurance Company's arbitrator without first giving the Insured the opportunity to agree to a single arbitrator within

thirty (30) days in accordance with the procedure laid out in the Arbitration Clause. *Compare* Ex. G *with* Ex. A at Form SMB 300 2111 p. 27 of 40 ¶ 1.

38.    On 4/6/23, the Insured's counsel responded to the 3/21/23 Letter advising that the Insurance Companies had waived the right to arbitration on this dispute because the Insured terminated both the public adjuster contract and the power of attorney and that neither Mr. Drillich nor his firm were adjusting the loss and that the 3/3/23 letter that the Insurance Companies referred to in their invocation of arbitration was merely an automatically generated letter from Mr. Drillich's office that was sent to all contacts in his claims management software to update his new office address.   *See* Letter dated 4/6/23 from the Insured's counsel to the Insurance Companies' counsel, attached as **Exhibit H,** pp. 1-2.

39.    The Insured's response letter further objected to the re-invocation of arbitration based on the Insurance Companies' prior waiver of arbitration it had offered in its 1/12/23 Letter in order to induce the Insured to terminate the public adjuster contract and the limited power of attorney with Mr. Drillich.  *Id.* at pp. 2-3.

40.    Finally, the Insured's letter informed the Insurance Company that the Insured would "refrain from relying on or using the public adjuster's estimate during the adjustment" of the Claim, despite the considerable and unnecessary out-of-pocket expenses it would incur in acquiring an additional estimate from a licensed contractor. *Id.* at p. 6.

41.    Neither the Insurance Companies nor their counsel responded to the Insured's 4/6/23 letter.

42.    The Insured reasonably believed that, based upon the parties' agreement for Defendant to forego arbitration of the then existing disputes between the parties, in particular those related to the public adjuster, that it was not required to name its own arbitrator, as that issue was moot given the Insured's compliance with all of the Insurance Company's demands related to Mr. Drillich.

43.    The next correspondence the Insured received from the Insurance Companies was on April 11, 2023, wherein the Insurance Companies issued a coverage determination (the "Coverage Letter") and payment totaling $268,232,97. *See* Coverage Letter dated 4/11/23, attached as **Exhibit I.**

44.     The Coverage Letter made no mention of any pending invocation of arbitration.  Rather, it invited the Insured to provide "additional information or legal authority" for further review "which you believe would establish coverage under the policy." Ex. I pp. 1-8.

45.    Additionally, the Coverage Letter appeared to confirm the Insurance Companies' withdrawal/waiver of its prior demands for arbitration by, "specifically reserv[ing] … their right ***to demand*** arbitration under the terms of the Policy for any matter in dispute including, but not limited to, any use of a public adjuster by the Insured." *See* Ex. I p. 8 (emphasis added).

46.    The lack of any mention of pending or invoked arbitration in the Coverage Letter, along with the reservation of right to do so in the future, led the Insured to reasonably believe that the Insurance Companies, upon being informed that the Insured was no longer working with or relying on Mr. Drillich in any capacity,

16

had abandoned any prior demands for arbitration in favor of issuing the Coverage Letter.

47.     Upon receipt of the Coverage Letter, the Insured began the process of obtaining a general contractor's repair estimate (as insisted upon by the Insurance Companies) and determining its next steps to continue adjusting the claim with the Insurance Companies.

48.     The Insured did not communicate any objection to the Coverage Letter to the Insurance Companies from the date it received the Coverage Letter through May 30, 2023.

49.     On 5/31/23, the Insurance Companies' counsel sent the Insured a letter informing the Insured that the Insurance Companies had, *ex parte,* selected an arbitrator on behalf of the Insured, whom the Insurance Companies had instructed to proceed with arbitration *without the Insured's knowledge or consent* (the "Ex Parte Arbitration Letter"):

> As of today, the Insurers have received no response from you regarding your selected arbitrator. Accordingly, pursuant to the terms of the policy, we have selected James Kelly as the arbitrator selected on behalf of the Insured. His contact information is as follows:
>
> James L. Kelly, Jr.
> 8 Masters Drive
> Ocean View, DE 19970
> Jkelly23@gmail.com
>
> Both the Insurers' arbitrator, Mr. Swierkiewicz, and Mr. Kelly have been notified of their selections and have been instructed to select an Umpire in accordance with the terms of the Policy, as follows:

H. Property Loss Conditions

The following Property Loss Conditions apply:

\*\*\*

The Parties may agree upon a single Arbitrator within thirty (30) days of one receiving a written request from the other for arbitration. If they do not agree on one Arbitrator, the Claimant (the party requesting arbitration) shall appoint his or her Arbitrator and give written notice thereof to the Respondent (the party receiving a request for arbitration.) Within thirty (30) days of receiving such notice, the Respondent shall appoint his or her Arbitrator and give written notice of his or her selection to the Claimant. If the Respondent does not provide written notice of his or her Arbitrator within thirty (30) days of receiving the Claimant's notice, the Claimant may nominate an Arbitrator on behalf of the Respondent.

*See* Ex Parte Arbitration Letter dated 5/31/23, attached as **Exhibit J,** pp. 1-3.

50.    The purported basis for the Insurance Companies' *ex parte* appointment of the Insured's arbitrator and instruction to its unilaterally selected arbitration panel to proceed with arbitration without the knowledge or consent of the Insured was as follows:

I write to you regarding the demand for arbitration which was sent to you by the Insurers on March 21, 2023. The demand for arbitration was sent in response to the Notice of Intent to Litigate that you submitted to the Florida Department of Financial Services on March 7, 2023.

In the March 21, 2023, letter, the Insurers provided notice that they were invoking arbitration to resolve all disputes. As previously stated, all disputes are settled through arbitration in accordance with the terms of the Policy, as follows:

*See* Ex. J p. 1 (emphasis added).

51.    The Insurance Companies' attempt to recharacterize and broaden the

limited scope of their prior invocation of arbitration is belied by the language of the 3/21/23 Letter. While the 3/21/23 letter had noted immediately after its citation of the Policy's arbitration clause that the "Arbitration panel is to resolve all disputes between the parties," which is nothing more than a paraphrase of the scope of the arbitration provision, later in the same letter it *explicitly limited* its invocation of arbitration to issues "outlined in this correspondence" (i.e., Insured's use of a public adjuster, and possibly (although far from clearly) the validity of the Notice of Intent):

> In addition to invoking ***arbitration on the issues outlined in this correspondence, the Insurers reserve the right to invoke arbitration regarding any additional disputes or issues that may arise in regarding this Claim.***

*See* Ex. G p. 4 (emphasis added). The Insurance Companies' reservation of the right to *invoke* arbitration regarding any *additional* disputes in the future confirmed that the invocation of arbitration sought in the 3/21/23 letter was limited to issues outlined in that letter. *Id.*

52.    Within an hour of receiving the Ex Parte Arbitration Letter, the Insured's counsel immediately objected to the *ex parte* arbitration via email to the Insurance Companies' counsel informing him of the Insured's understanding that "parties, prior to your involvement, already agreed in writing that this claim would not be arbitrated" and attached its 4/6/23 response letter. *See* Email dated 5/31/23 from George Mitchell to Isaiah Floyd, attached as **Exhibit K**.

53.    The Insurance Companies' counsel acknowledged that the Insurance Companies had previously "agreed to retract their demand for arbitration concerning

this particular dispute on the condition that your client can present written evidence of the Public Adjuster's withdrawal," but argued that the "Insurers maintain all their rights as per the stipulations in the Policy," citing a reservation of rights in the 1/12/23 letter to seek a determination by an arbitration panel for any existing or future disputes. *See* Email dated 6/1/23 from Isaiah Floyd to George Mitchell, attached as **Exhibit L**.

54.    The Insurance Companies' counsel then took the new position, ***which the Insurance Companies had not previously expressed in the 3/21/23 Letter or otherwise,*** that the "Insurers are calling for arbitration to address a *fresh* disagreement about the scope and valuation." *See* Ex. L (emphasis added).

55.    On June 2, 2023, after further email exchanges proved fruitless, the Insured's counsel sent a letter to the Insurance Companies' counsel explaining its position objecting to arbitration but agreeing to, in an abundance of caution and under protest, provide the name of its selected arbitrator. The Insured asked that the Insurance Companies immediately confirm that they would be withdrawing their unilateral selection of the Insured's arbitrator. *See* Letter dated 6/2/23 from George Mitchell to Isaiah Floyd, attached as **Exhibit M**.

56.    Despite the Insured's attempts to accommodate the Insurance Companies' demands, and in keeping with its needlessly uncooperative and aggressive approach to the adjustment of this Claim, the Insurance Companies blatantly refused to agree to minimize the dispute and withdraw their unilateral, *ex parte* selection of both arbitrators.  Instead, in an attempt to stack the deck completely against the

insured and avoid any chance of a fair and equitable result, the Insurance Companies doubled down on their insistence on proceeding with their unilaterally appointed *ex parte* arbitrator, indicating that "we are putting our foot down and pushing forward until an appellate court or the panel tells us we are wrong." *See* Email correspondence chain between the parties' counsel, attached as Composite **Exhibit N**.

57.     Nothing in the Arbitration Clause makes time of the essence as to the appointment of arbitrators. *See* Ex. A at Form SMB 300 2111 pp. 27-28 of 40.

58.     In fact, the Insurance Companies themselves waited well past thirty days from their purported invocation of arbitration as to all issues related to the Claim in the 3/21/23 Letter before informing the Insured of their unilateral, *ex parte* selection of an arbitrator on the Insured's behalf.

59.     Again, the Insurance Companies' insistence on proceeding to arbitration with a panel of arbitrators appointed entirely by the Insurance Companies (and presumably their appointed umpire) based on the Insured's purported failure to appoint its own arbitrator in response to a notice ***which was by its own terms limited to the Public Adjuster issue*** (that the Insured believed in good faith had been resolved based on the Insurance Companies prior waiver of arbitration, its own compliance with the Insurance Companies' demands, and the Insurance Companies' issuance of the Coverage Letter and payment which did not mention any pending arbitration) leaves the Insured in doubt of its rights under the circumstances of this case to appoint its own arbitrator and to an arbitration tribunal determining its rights under the Policy

21

that is not composed entirely of individuals hand-picked by the Insurance Companies.

60.    Accordingly, the requirements of the Policy's Arbitration Clause, when considered in light of the Insurance Companies' (i) failure to propose an agreement to a single arbitrator upon invoking arbitration as required by the Policy; (ii) waiver of their right to arbitrate certain then pending disputes; (iii) explicit limitation of their 3/21/23 Letter "invoking arbitration on the issues outlined in this correspondence," and (iv) current position that the 3/21/23 Letter gave them the right to appoint the Insured's arbitrator as to "a fresh disagreement about the scope and valuation" without first giving the Insured the 30 days provided for in the Policy to appoint its own arbitrator, has created doubt for the Insured as to its rights and obligations under the Policy and the Arbitration Clause.

61.    The Insurance Company's position has created a real and present controversy between the Insurance Companies and the Insured.

62.    All conditions to the bringing of this action have been performed, waived, or excused.

63.    The Insured hired undersigned counsel to represent it in this action and is obligated to pay its attorneys a reasonable fee for their services.

64.    Pursuant to section 626.9373, Florida Statutes, the Insured is entitled to recover the legal fees incurred in bringing this action.

## <u>COUNT I</u>
## <u>DECLARATORY JUDGMENT</u>

65.    Plaintiff adopts and realleges paragraphs 1 – 64 above.

66.     Pursuant to 28 U.S.C. § 2201, the Insured seeks a declaratory judgment as it is in doubt as to its rights and obligations under the Policy.

67.     There is a present existing and bona fide controversy between the Insured and the Insurance Companies regarding the rights and duties under the Policy, and the rights and duties of the parties can only be determined by a declaratory judgment.

68.     The relief sought relates to an identifiable controversy between the parties as it pertains to the interpretation of the Policy and its Arbitration Clause and is not sought merely for purposes of obtaining legal advice by the Court.

69.     The issues for which the Insured seeks declaratory relief are ripe for adjudication and a prompt and final determination of the rights and obligations of the Insurance Companies is necessary as the declarations by this Court will govern the parties' actions.

WHEREFORE, the Insured respectfully demands entry of a declaration from the Court that:

A. In the 1/12/23 Letter, the Insurance Company made a valid offer to waive arbitration under the Policy of all then pending disputes between the parties, including the retention of Mr. Drillich as a public adjuster and appraiser, the Insurance Companies' alleged inability to inspect of the roof because it was sealed and wrapped, and the alleged improper use of an assignment of benefits (the "Pending Disputes"), if the Insured provided written proof that it had withdrawn the representation of the public adjuster, Mr. Drillich, by January 22, 2023;

B. On January 20, 2023, the Insured accepted the Insurance Companies' offer to

waive arbitration on all Pending Disputes between the parties when the Insured provided written proof to the Insurance Company that it withdrew from the representation by the public adjuster and appraiser, Mr. Drillich;

C. The Insured performed the required conditions for the waiver of arbitration on the Pending Disputes, and the Insurance Company was bound by its agreement to waive arbitration on the Pending Disputes;

D. The Insurance Companies' invocation of arbitration in the 3/21/23 Letter was expressly limited to issues related to Mr. Drillch's representation of the Insured as a public adjuster and appraiser and did not function as an invocation of arbitration as to any other dispute;

E. The Insurance Companies' invocation of arbitration in the 3/21/23 Letter with respect to the issues related to Mr. Drillich's representation of the Insured as a public adjuster and appraiser where subject to, subsumed within, and waived by agreement between the parties and could not form the basis for the invocation of arbitration and, to the extent there was any perceived breaches of that agreement, any such breach was cured when the Insured agreed to forego the reliance on Mr. Drillich's estimate;

F. The Insurance Companies' failure to respond to the Insured's 4/6/23 letter indicating that the Insured had complied with all of the Insurance Companies' demands related to discontinuing the representation of Mr. Drillich as a public adjuster and appraiser, coupled with the Insurance Companies' failure to mention any pending arbitration or invocation of arbitration in its subsequent Coverage

24

Letter issuing payment and specifically reserving their right to demand arbitration, constituted an abandonment of any prior invocation of arbitration related to the Claim, including any invocation of arbitration in the 1/12/23 Letter and the 3/21/23 Letter;

G. The Insurance Companies did not invoke arbitration as to the present scope and valuation dispute at any point prior to June 1, 2023;

H. Pursuant to the terms of the Policy's Arbitration Clause:

> The Parties may agree upon a single Arbitrator within thirty days (30) of one receiving a written request from the other for arbitration. If they do not agree on one Arbitrator, the Claimant (the party requesting arbitration) shall appoint his or her Arbitrator and give written notice thereof to the Respondent (the party receiving a request for arbitration). Within thirty days (30) of receiving such notice, the Respondent shall appoint his or her Arbitrator and give written notice of his or her selection to the Claimant.

I. The Insurance Companies' repeated failure to follow the procedure outlined in the Policy they drafted by failing to provide the Insured with thirty (30) days to agree upon a single arbitrator before appointing their own arbitrator breached the Arbitration Clause and rendered the Insurance Companies' attempt to proceed with arbitration invalid and ineffectual;

J. The Insurance Companies' *ex parte,* unilateral appointment of an arbitrator on behalf of the Insured on 5/31/23 as to the present scope and valuation dispute, which was never previously raised, was improper and violated the Insured's rights under the Policy's Arbitration Clause to select its own arbitrator, and rendered the Insurance Companies' attempt to proceed with arbitration invalid and ineffectual;

25

K. The Insurance Companies' *ex parte* attempt to arbitrate the dispute after the Insured objected to and requested the Insurance Companies to withdraw its *ex parte* selection of an arbitrator on its behalf so that it could appoint its own arbitrator was improper and violated the Insured's rights under the Policy's Arbitration Clause to select its own arbitrator, and rendered the Insurance Companies' attempt to proceed with arbitration invalid and ineffectual;

L. The Insurance Companies *ex parte* attempt to "appoint" an arbitrator on behalf of the Insured and proceed with arbitration is improper and violated the Insured's rights under the Policy's Arbitration Clause to appoint its own arbitrator because the Policy merely gives the Insurance Company the ability to "nominate" an arbitrator on behalf of the Insured in certain circumstances, and rendered the Insurance Companies' attempt to proceed with arbitration invalid and ineffectual;

M. To proceed with arbitration, the parties shall re-commence the procedural mechanisms for arbitration under the Policy beginning with the parties having thirty (30) days from rendition of judgment on this declaratory action to attempt to agree upon a single arbitrator.

N. The Insured shall not be responsible for any expenses incurred in the invalid *ex parte* arbitration proceedings improperly instituted and continued by the Insurance Company pursuant to its 5/31/23 Letter, which expenses shall be borne entirely by the Insurance Company.

O. The Insured further respectfully demands the Court issue all other declaratory relief it deems just and proper and awards attorney's fees and costs and such other relief

as appropriate.

## DEMAND FOR JURY TRIAL

The Insured demands a trial by jury of all issues so triable as a matter of right.

Dated this 9th day of June, 2023.

Respectfully submitted,

**Chavin Mitchell Shmuely**
*Attorneys for Plaintiff*
12955 Biscayne Boulevard, Suite 201
North Miami, Florida 33181
Telephone: (866) 345-2033
Facsimile: (305) 981-1054
E-Service:
propertyservice@cmslawgroup.com

By: /s/ Valorie S. Chavin
Florida Bar No. 14226
E-mail: vchavin@cmslawgroup.com
James E. Mitchell
Florida Bar No. 30893
E-mail: jmitchell@cmslawgroup.com